948 A.2d 701 (2008)
400 N.J. Super. 553
Kenia ALVES, Plaintiff-Appellant,
v.
Paul H. ROSENBERG, M.D., Defendant-Respondent.
Docket No. A-0015-07T1
Superior Court of New Jersey, Appellate Division.
Telephonically Argued May 13, 2008.
Decided June 13, 2008.
*703 Peter Berge argued the cause for appellant (Bendit Weinstock, P.A., West Orange, attorneys; Mr. Berge, Christine M. Tiritilli, and William L. Gold, on the briefs).
Richard A. Amdur, Eatontown, argued the cause for respondent (Amdur, Maggs & Shor, P.C.; Mr. Amdur, of counsel and on the brief).
Before Judges PARRILLO, S.L. REISNER and GILROY.
The opinion of the court was delivered by
PARRILLO, J.A.D.
In this medical malpractice action, plaintiff Kenia Alves appeals from a final judgment entered on a jury's no cause verdict in favor of defendant Paul H. Rosenberg, M.D. Because we find the trial court erred in allowing defense counsel to read extensive portions of the non-testifying defendant's deposition testimony into the record, we reverse.
By way of background, on December 3, 2001, plaintiff, a twenty-seven-year-old Brazilian citizen, consulted with defendant, a board-certified plastic surgeon, about laser hair removal in her pubic and lower abdominal areas. According to plaintiff, she informed defendant of her low tolerance for pain and of her kelod scar, after which defendant documented plaintiff's skin sensitivity in his records. After being assured that a topical gel would relieve any associated pain, plaintiff scheduled the procedure for the following day. She was given a cream to be applied prior *704 to the procedure to numb the area that would be treated.
The next day, plaintiff signed a consent form indicating that she had "been informed that scarring, blistering, purpura, hypopigmentation or hyperpigmentation are possible risks and complications." During the ensuing procedure, plaintiff complained of pain several times and in response to her complaints, defendant blew cold air through a tube and lowered the laser's frequency.
Immediately after the procedure, plaintiff was still in pain and noticed "bubbles" on her skin. Defendant escorted her back to the procedure room where he administered additional "forced air cooling," and applied ice and aloe vera gel to the affected area. Plaintiff, however, continued to experience severe pain, so defendant administered a shot. Thereafter, she slept for about three hours at the office. When she awoke, defendant gave plaintiff a two-day supply of Toradol, a pain and anti-inflammatory medication, as well as aloe vera gel for the burns.
The pain persisted upon her return home. On a follow-up visit to defendant's office on December 6, defendant noted first-degree burns and dark circles. On a subsequent visit one week later, defendant noted plaintiff was "doing well. No more pain in bikini area. Spotty areas of hyper[-] and hypopigmentation, especially at periphery."
Plaintiff complained of pain for about two weeks after the procedure. During that time, she was unable to wear underwear or walk without discomfort. She consulted a dermatologist, Dr. Ira Guterman, who noted "scattered superficial crusting with pigmented" and "superficial laser burns." Guterman diagnosed plaintiff with first degree burns and prescribed Bactroban antibiotic ointment. At a follow-up visit on December 21, 2001, Guterman noted loss of pigmentation, but "no crusting" and that the "laser burns [are] much improved."
About two months after the procedure, plaintiff returned to work as a "go-go dancer." Although she was able to wear both one- and two-piece bikinis while dancing, she had modified her style of dress in other ways to hide her scars. For instance, she no longer wears bikinis "from Brazil" or low-cut jeans or blouses and wears make-up to cover-up the marks.
Plaintiff sued defendant in medical malpractice for injuries received during the hair removal procedure. She later sought a stay of the proceedings because of visa complications that delayed her return from Brazil. The denial of this motion resulted in the grant of defendant's motion for summary judgment based on plaintiff's failure to file an expert report within the discovery period. We reversed both orders and remanded the matter with instructions to conduct a case management conference and issue a case management order with a discovery end date. Alves v. Rosenberg, No. A-5574-02T5, 2006 WL 1008669 (App. Div. April 19, 2006) (slip op. at 7-8).
Due largely to plaintiff's unavailability and defendant's background[1], the trial proceeded without live witnesses. All testimony was presented via either videotape *705 or the reading of depositions. Thus, in addition to plaintiff's own de bene esse videotaped testimony, plaintiff also offered the videotaped deposition testimony of her expert, Dr. Richard Marfuggi, a board-certified plastic surgeon. Marfuggi opined that defendant deviated from the standard of care in his treatment of plaintiff in several ways, by failing to: (1) take into account her previous history of poor scarring from other injuries; (2) conduct a "spot test"; (3) "stop and/or alter the settings of the laser in light of the patient's expression of experiencing severe pain during the procedure"; and (4) properly evaluate the burns suffered by plaintiff inasmuch as blisters and crusting are signs of second-degree, and not first-degree burns. Marfuggi concluded that plaintiff's injuries, including the pain, burns and skin changes, were the result of defendant's deviations.
Plaintiff's counsel also read limited portions of defendant's deposition testimony into evidence, specifically those excerpts wherein he said he addressed plaintiff's post-procedure pain, as well as those wherein he denied that plaintiff was in severe pain during the procedure, received second- or third-degree burns, or required a spot test.
The defense presented no witnesses on its case-in-chief, although defendant was present during the trial. Instead, the defense sought to read into evidence additional portions of defendant's deposition admittedly unrelated to those excerpts previously read into the record by plaintiff, and addressing defendant's evaluation and treatment of plaintiff, laser hair removal generally, and spot testing. Over plaintiff's objection, the trial judge admitted this evidence, interpreting Rule 4:16-1(d) as expressly allowing such a tactic. As noted, the jury ultimately found in defendant's favor and consequently the court entered an order of final judgment dismissing plaintiff's complaint.
On appeal, plaintiff principally argues that the judge committed reversible error in allowing defense counsel to read portions of defendant's deposition without making the requisite showing of fairness under Rule 4:16-1(d). We agree.
Under our rules of evidence, deposition testimony is generally inadmissible at trial as hearsay unless it falls under one of the enumerated exceptions. N.J.R.E. 801; N.J.R.E. 802. Rule 4:16-1 sets forth instances where a deposition may be used at trial. Specifically,
At the trial . . . any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used in accordance with any of the following provisions:
(a) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness, or for any other purpose permitted by the Rules of Evidence.

(b) The deposition of a party . . . may be used by an adverse party for any purpose against the deponent. . . .
(c) Except as otherwise provided by R. 4:14-9(e), the deposition of a witness, whether or not a party, may be used by any party for any purpose, against any other party who was present or represented at the taking of the deposition or who had reasonable notice thereof if the court finds that the appearance of the witness cannot be obtained. . . .
(d) If only part of a deposition is offered in evidence by a party, an adverse party may require the offering party to introduce any other part which ought in fairness be considered with the part introduced, and any party may offer any other parts.

*706 [R. 4:16-1 (emphasis added).]
Thus, under Rule 4:16-1, any deposition may be used to contradict or impeach the testimony of the deponent as a witness, or where the deponent is "unavailable," provided the party against whom the deposition is sought to be used was on notice of the deposition and had the opportunity to cross-examine the deponent. R. 4:16-1(a), (c). Further, the deposition of a party may be used at trial by the adverse party for any reason. R. 4:16-1(b). Significantly, for present purposes, paragraph (d) of the rule also "permits the adverse party to offer in evidence any part of an admissible deposition not offered by the proponent thereof[,]" Pressler, Current N.J. Court Rules, comment 1 on R. 4:16-1 (2008) (emphasis added), or "any other part which ought in fairness be considered with the part introduced. . . ." R. 4:16-1(d) (emphasis added).
Paragraph (d)'s notion of "fairness" is paralleled in N.J.R.E. 106's "doctrine of testimonial completeness." Biunno, Current N.J. Rules of Evidence, comment on N.J.R.E. 106 (2008). According to the doctrine:
[T]he opponent, against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance. It has been seen, . . . that there is much opportunity for difference of opinion whether the proponent in the first instance must put in the whole. But there is and could be no difference of opinion as to the opponent's right, if a part only has been put in, himself to put in the remainder.

[State v. Lozada, 257 N.J.Super. 260, 270, 608 A.2d 407 (App.Div.) (alterations in original) (quoting 7 Wigmore on Evidence § 2113 (Chadbourn rev. 1978)), certif. denied, 130 N.J. 595, 617 A.2d 1218 (1992).]
Thus, N.J.R.E. 106 provides:
[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously.
Consequently, the completeness doctrine allows the reading of a second writing or statement where "it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding." Lozada, supra, 257 N.J.Super. at 272, 608 A.2d 407 (discussing doctrine of completeness in context of federal counterpart to N.J.R.E. 106) (citations omitted).
As noted then, deposition testimony will be admissible only as specifically exempted from the hearsay proscription or as required by fairness. Consistent with this principle, plaintiff at trial read limited portions of defendant's deposition as admissions by a party opponent. See N.J.R.E. 803(c)(25); R. 4:16-1(b). In response, defendant sought to introduce other excerpts from his deposition which he readily acknowledged were unrelated to the admitted portions. Relying on the last phrase of section (d) to the effect "and any party may offer any other parts[,]" the trial judge allowed defense counsel to read extensively from defendant's deposition  nearly twelve pages in all. Therein, defendant denied that plaintiff was in pain during the procedure or that a "test spot" was appropriate, or would have made a difference, and further asserted that plaintiff's "response to the laser was a classic blistering first-degree burn not deeper than that." We conclude the admission of this evidence constituted reversible error.
*707 To be sure, "a trial court is afforded considerable latitude regarding the admission of evidence, and is to be reversed only if the court abused its discretion." State v. Nelson, 173 N.J. 417, 470, 803 A.2d 1 (2002) (citation omitted). Discretion, however, means legal discretion, "in the exercise of which the judge must take account of the law applicable to the particular circumstances of the case and be governed accordingly." State v. Steele, 92 N.J.Super. 498, 507, 224 A.2d 132 (App. Div.1966). Obviously, "[i]f the trial judge misconceives the applicable law or misapplies it . . . the exercise of legal discretion lacks a foundation and becomes an arbitrary act." Ibid. In this regard, the trial court's "`interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" Maglies v. Estate of Guy, 193 N.J. 108, 116, 936 A.2d 414 (2007) (quoting Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995)).
Here, the trial court misconstrued section (d) by reading the phrase "and any party may offer any other parts" in isolation and out of context, without reference to the limiting language preceding it. Clearly the phrase in issue is qualified by the rule's prefatory language that the proffered deposition testimony be "admissible under the rules of evidence[,]" R. 4:16-1; Pressler, supra, comment 1 on R. 4:16-1, or as otherwise required by fairness. N.J.R.E. 106; see also Martin v. Prime Hospitality Corp., 345 N.J.Super. 278, 294, 785 A.2d 16 (App.Div.2001); Moksvold v. Meyers, 130 N.J.Super. 481, 484-85, 327 A.2d 681 (App.Div.1974).
Neither of these conditions, however, have been satisfied. Defendant's self-serving, exculpatory representations in those portions of his deposition proffered on his behalf do not qualify either as admissions of a party opponent under N.J.R.E. 803(c)(25), or, because of his availability, under any of the other recognized exceptions to the hearsay rule. Nor are they necessary to ensure fairness under N.J.R.E. 106 for a complete understanding of the testimony. On this score, defendant does not claim that the proffered passages were required to complement, supplement, contextualize or contradict those portions admitted on plaintiff's case-in-chief, or to avoid confusing or misleading the trier of fact. On the contrary, defendant acknowledged their unrelatedness, but nevertheless urges his statements in the deposition are admissible simply because they were made by him, and not because of their testimonial trustworthiness. Yet even the doctrine of completeness, which we find not implicated here, does not require admission of the self-serving, exculpatory portions of defendant's depositions. See, e.g., Lozada, supra, 257 N.J.Super. at 272, 608 A.2d 407; State v. Gomez, 246 N.J.Super. 209, 216-17, 587 A.2d 272 (App.Div.1991); State v. Colon, 246 N.J.Super. 608, 613, 588 A.2d 440 (App.Div.1991).
The trial court's expansive interpretation of Rule 4:16-1 would allow unlimited use by a defendant of his or her own deposition testimony and for any reason simply because an adversary admitted unrelated portions thereof on its case-in-chief. We find no warrant for that construction in either the language of the rule itself or in interpretative case law. See, e.g., Martin, supra, 345 N.J.Super. at 294, 785 A.2d 16 (rejecting defendant's argument that under R. 4:16-1(d) it should be allowed to admit the entire statement of a fact witness after the plaintiff introduced portions thereof into evidence, and noting that the defendant made "an inadequate showing that fairness required other parts of the statement to be admitted") (emphasis *708 added). Moreover, an interpretation that allows any party to read any portion, or the entirety, of his or her own deposition for any reason renders the limitation of section (d) irrelevant and obviates the need for a "fairness" determination altogether.
Nor was the admission of defendant's excerpts justified because plaintiff "opened the door." "The `opening the door doctrine' is essentially a rule of expanded relevancy and authorizes admitting evidence which otherwise would have been irrelevant or inadmissible in order to respond to (1) admissible evidence that generates an issue, or (2) inadmissible evidence admitted by the court over objection." State v. James, 144 N.J. 538, 554, 677 A.2d 734 (1996). Similar to the "completeness" doctrine, the "open door" doctrine provides an adverse party the opportunity to place evidence into its proper context. Ibid. Here, however, as previously noted, defendant conceded that the proffered excerpts were unrelated, and therefore not offered "in response," to the portions read by plaintiff.
Lacking any sound evidential basis, defendant's extensive and selective use of his own substantive deposition testimony had a real potential for unfairness to plaintiff, who was thereby deprived of the opportunity for full and effective cross-examination at trial, and a real capacity to unjustly influence the trier of fact. We therefore consider the error reversible. Such error was compounded by precluding plaintiff thereafter from challenging defendant's credibility through the use of other omitted portions of his deposition.
In light of our disposition, we need not address other issues raised by plaintiff claiming error in excluding evidence of defendant's inability to prescribe medication and admitting evidence of plaintiff's work as a go-go dancer. Suffice it to say, as to the former, plaintiff's proffer was occasioned only by defendant's use of his deposition testimony, which we have held to be improper. As to the latter, the issue will presumably be considered in limine on remand, based on the particular proffers made at that time.
We do address, however, plaintiff's final claim that the trial court erred by denying plaintiff's motion for a directed verdict under Rule 4:40-1 because defendant failed to offer any expert testimony to counter that offered by plaintiff's expert, Marfuggi. We disagree.
The standard for determining a motion under Rule 4:40-1 is the same as that for a motion for involuntary dismissal under Rule 4:37-2(b). Dolson v. Anastasia, 55 N.J. 2, 5, 258 A.2d 706 (1969). Specifically, the trial court must decide
whether the evidence, together with the legitimate inferences therefrom, could sustain a judgment in favor of the party opposing the motion, i.e., if, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied.
[Ibid. (internal quotes and citations omitted).]
Ordinarily, such a motion should be denied when the case rests upon issues of credibility. Johnson v. Salem Corp., 97 N.J. 78, 92, 477 A.2d 1246 (1984). "[S]imply because proofs are undisputed is insufficient in and of itself to warrant the grant of a motion for judgment . . . in situations in which credibility is at issue, since the fact-finder is free to reject those uncontested proofs on credibility grounds." Ibid.; see also D'Amato v. D'Amato, 305 N.J.Super. 109, 115, 701 A.2d 970 (App. *709 Div.1997) (noting that a jury issue is created where reasonable minds may differ as to the truth of testimony, "whether it be uncontradicted, uncontroverted or even undisputed"). Such credibility determinations, however, may be removed from the jury's purview and a directed verdict granted when the testimony provided is uncontradicted and reliable, i.e., the testimony "is not improbable, extraordinary or surprising in its nature, or [where] there is no other ground for hesitating to accept it as the truth. . . ." Ferdinand v. Agric. Ins. Co., 22 N.J. 482, 494, 498, 126 A.2d 323 (1956).
Here, plaintiff essentially contends that without an expert, defendant could not overcome Marfuggi's uncontradicted, credible testimony that defendant's conduct deviated from the standard of care about which plaintiff's expert opined. Yet, plaintiff overlooks record evidence upon which a jury could question Marfuggi's conclusions, especially when affording defendant all reasonable inferences to which he is entitled at that stage. In particular, Marfuggi acknowledged that he had not performed a laser hair removal in almost six years and, on cross-examination, that he neither interviewed nor examined plaintiff personally. More significantly, several of the facts upon which the expert based his conclusion came directly from plaintiff's testimony, which was contradicted in part by defendant's deposition testimony and plaintiff's own medical record. Thus, viewing the record in the light most favorable to defendant, we find no error in the judge's denial of plaintiff's motion for judgment under Rule 4:40-1.
Reversed and remanded.
NOTES
[1] At the time of plaintiff's treatment, there were restrictions imposed on defendant's medical license, due to his own drug addiction, prohibiting him from prescribing or administering certain narcotic painkillers. At a pre-trial in limine hearing, the trial judge precluded reference to defendant's past drug addiction and medical license suspension as unduly prejudicial, N.J.R.E. 403, but permitted general inquiry as to the nature of the limitations or conditions placed on defendant's medical license at the time of plaintiff's treatment.